412 A.2d 855

**COMMONWEALTH of Pennsylvania**

**v.**

**Reginald GLOVER.**

Supreme Court of Pennsylvania.

Argued Dec. 13, 1979.

Decided March 20, 1980.

460

Lawrence S. Rosenwald, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Suzanne McDonough, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On January 5, 1976 Stephen Johnson and two companions were attacked by a gang of young men as they came out of a neighborhood store. Johnson died as a result of knife wounds received in the attack; his two companions were hospitalized with knife wounds. Reginald Glover, appellant, was arrested on January 6, 1976 and charged with murder, criminal conspiracy, two counts of aggravated assault and possessing an instrument of a crime. He was tried by the Court of Common Pleas of Philadelphia County, sitting without a jury, and was convicted of Murder of the Third Degree and all of the other charges. Post-trial motions were denied and a sentence of two to fifteen years was imposed for the murder conviction, with concurrent sentences of two to ten years for the criminal conspiracy conviction and five years probation for the assault and weapons convictions. Glover filed appeals in both the Superior Court and in this Court. The Superior Court certified its appeal to us and this consolidated appeal followed. We affirm the judgments of sentence.

Appellant first argues that his statement to the police concerning his role in the incident should have been suppressed. In this regard, he claims that the statement was the product of an unlawful arrest; the statement was coerced; the statement was not knowingly given; and finally that the Commonwealth should be deemed to have admitted the well-pleaded facts of appellant's motion to suppress his statement because of its failure to answer the motion within seven (7) days, as required by former Pa.R.Crim.P. 308(a). Secondly, appellant argues that the identification testimony at trial should be ruled inadmissible and a new trial granted because it was tainted by a pre-trial identification made in violation of appellant's Sixth Amendment right to the effective assistance of counsel.

The appellant was arrested pursuant to information given the police by two young men who were already in custody

and had been questioned about the Johnson killing. One of the young men, Sanford, told police that he participated in the attack and described the progress of the attackers as they moved from a pool room to the point of the attack: "As we were going to Nicetown we met other dudes as we walked towards Old York Road. We met Onion, Reggie, and a whole lot of other dudes. We walked down Old York Road to Wyoming. When we reached Old York Road and Wyoming everybody split into groups. We went into Nicetown turf." N.T. 3–16–76 at 15. Sanford was unable to give "Reggie's" last name and he did not give a description. The second young man, Ransom, said that Reginald Glover, appellant, was "involved" in the stabbing incident. Ransom positively identified a photograph of appellant, and police subsequently arrested Glover.

The question raised on these facts is whether the police had probable cause to arrest appellant. This Court has held that probable cause to arrest is established by information supplied by a confessed accomplice. *Commonwealth v. Chumley*, 482 Pa. 626, 643, 394 A.2d 497, 506 (1978). In *Commonwealth v. Stokes* we stated: "[I]n determining whether probable cause exists, we have tended to credit information supplied by one who has some direct personal knowledge of the crime." 480 Pa. 38, 44, 389 A.2d 74, 77 (1978). In this case, one informant, who implicated himself in the incident, also implicated "Reggie." The second informant, also involved in the incident, while being questioned about the crime, implicated "Reginald Glover", the appellant herein. Acting on this information, the police arrested Glover. Under these facts, there was probable cause for the arrest.

Appellant's argument that the statement given to police was coerced is based on testimony of appellant's mother that when she saw appellant after he had been interrogated by police for several hours, he appeared to have been beaten and there were marks on his face. She testified further that his clothes were dirty and that he told her he had been forced to give the statement. Further, appellant

offered evidence that he had complained to prison officials of physical ailments stemming from an alleged beating during his arrest.

The responsibility of this Court on review is:

"to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin,* supra 460 Pa. [516] at 521, 333 A.2d [892] at 895; see *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974). In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. See *Culombe v. Connecticut,* supra 367 U.S. [568] at 604, 81 S.Ct. [1860] at 1878, 6 L.Ed.2d 1037; *Commonwealth v. Goodwin, supra* 460 Pa. 521, 333 A.2d 895; *Commonwealth ex rel. Butler v. Rundle,* supra 429 Pa. [141] at 149–50, 239 A.2d [426] at 430.

*Commonwealth v. Kichline,* 468 Pa. 265, 280–281, 361 A.2d 282, 290 (1976).

■ Appellant's evidence indicates that he was admitted to the Philadelphia Detention Center on January 7, 1976. At the time of admission, he was given a complete physical examination. Although appellant testified that he was beaten and kicked by detectives during interrogation, and although he complained of an upset stomach when he arrived at the detention center on January 7, the medical records indicate no observable physical abnormalities. Further, although detention center records indicate that appellant claimed that he had been beaten at the time he was arrested, his mother's testimony is that she was present when the police arrived at her house to take her son into custody, and that she accompanied her son to the police station in the police car. Her testimony is silent as to any beating during that period of time. Finally, evidence that appellant was beaten by police is contradicted by testimony of the detective who questioned appellant. We conclude that the record supports the decision of the court below that appellant's statement was not coerced.

Next, appellant contends that the statement was not knowingly given because he was intellectually incapable of waiving his constitutional rights. He claims that evidence of his limited reading ability, when combined with evidence of his low intelligence quotient, indicated that he was unable to understand the *Miranda* warnings and that, therefore, the lower court improperly denied his motion to suppress his confession. This claim is without merit.

In the present case, the detective who questioned appellant testified that before he read appellant his *Miranda* warnings, he explained them to him in laymen's terms.[1] After determining that appellant understood him, the detective proceeded to read through the standard warnings. When appellant responded that he understood his rights, but still wished to give a statement, the detective proceeded with the interrogation. At the conclusion of the six page statement, appellant told the detective that he could not read. As a result of this claim, the detective brought appellant's mother and the mother of a co-defendant into the interrogation room to read the statement aloud to appellant. Since appellant's mother had forgotten her glasses, the co-defendant's mother read the statement aloud. After this, appellant signed each page of the statement, and his mother and the co-defendant's mother signed the statement as witnesses.

The defense presented evidence by stipulation that the defendant's public school record indicated that he had received poor grades in high school. In addition, the defense presented a psychiatrist who testified that he assessed the appellant's I.Q. at around 70. The psychiatrist also testified that the appellant's ability to read and write the English language was minimal and he would have been capable of

---

1. The detective testified:

   I spoke with him and I told him that he needn't talk to me, that he should realize I am a policeman, I am investigating a case against him, the he needn't talk to me, he has a right to remain silent, he could have a lawyer, if he couldn't afford one that we would have one for him. This is just so I would understand that I knew what he was talking about, to get a feel for the man. N.T. 3–16–76, 27–28.

understanding the *Miranda* warnings ". . . if they were read to him plainly and carefully, but if they were read very rapidly, I think he would have difficulty in understanding them." N.T. 4–14–76, 5–6.

It is well-settled that there is no *per se* rule of inability to waive constitutional rights based on mental deficiencies.

> This Court has consistently refused to adhere to a *per se* rule of incapacity to waive constitutional rights based on mental or physical deficiencies. *Commonwealth v. Scoggins*, 451 Pa. 472, 476, 304 A.2d 102 (1973); *Commonwealth v. Daniels*, 451 Pa. 163, 168, 301 A.2d 841, 844 (1973). Rather, we look at all the circumstances to determine if a knowing and intelligent waiver was effected. There is no question that a person of below average mental ability can effectively waive his constitutional rights. *Commonwealth v. Abrams*, 443 Pa. 295, 278 A.2d 902 (1971).

*Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 805 (1976).

This Court has held that the fact that a defendant could not read or write and had to have his statement read to him goes to the weight and not the admissibility of a confession. *Commonwealth v. Harper*, 485 Pa. 572, 584, 403 A.2d 536, 543 (1979). Moreover, the Court has repeatedly held that the fact that a defendant has a low I.Q. is not in itself sufficient to render his confession involuntary. Cf. *Commonwealth v. Crosby*, 464 Pa. 337, 346 A.2d 768 (1975) (I.Q. 70–75); *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970), *cert. denied* 401 U.S. 1004, 91 S.Ct. 1243, 28 L.Ed.2d 540 (1971) (I.Q. 71–76). In our view, the suppression court's finding of voluntariness is supported by the record, and should not be disturbed on appeal.

Appellant also contends that because the Commonwealth did not file an answer to appellant's pre-trial motion to suppress within seven (7) days, as required by Pa.R.Crim.P. 308, the allegations of the application should be admitted

and appellant's statement should have been suppressed.[2] The suppression hearing was held on March 16, 1976 and the Commonwealth filed its answer on that date, stating that the answer had not been filed earlier because of inadvertence. This Court held in *Commonwealth v. Reason*, 485 Pa. 450, 402 A.2d 1358, 1359 (1979) that at the time of the suppression hearing in this case, Rule 308 did not apply to pre-trial applications to suppress evidence. Instead, the applicable rule was Pa.R.Crim.P. 323(e), which provided; in pertinent part:

Rule 323. Suppression of Evidence

(e) Upon the filing of such application, a judge of the court shall fix a time for hearing, which may be either prior to or at trial, and which shall afford the attorney for the Commonwealth a reasonable opportunity for investigation and answer, and shall enter such interim order as may be appropriate in the interests of justice and the expeditious disposition of criminal cases.

Clearly, Rule 323, unlike former Rule 308, does not provide that the well pleaded facts in the application shall be admitted if no answer is filed. In this case, appellant did not claim that he was prejudiced by the late filing and an examination of the record reveals that appellant was adequately prepared to proceed at the suppression hearing. Therefore, we hold that the trial court was correct in permitting the Commonwealth's answer to be filed.

Finally, appellant contends that it was error to admit the in-court identification of him where the pre-trial identification was obtained in violation of appellant's Sixth Amendment right to the effective assistance of counsel. In this case, the in-court identification was furnished by Parsons, a

2. Pa.R.Crim.P. 308, as it existed at the time of the suppression hearing, provided in relevant part:

"Answers to pretrial applications (a) Answers may be filed not later than seven days after service of pretrial application, except for good cause shown. Failure to answer shall be deemed an admission of all well pleaded facts averred in the application." Rule 308 was amended in June of 1977, to eliminate the requirement of filing an answer to a pretrial motion except upon court order.

victim of the crime. Parsons had been present at a preliminary hearing held fifteen days after the incident at which hearing appellant and several other young men accused of the crime were also present. Appellant's statement was read to the preliminary hearing judge and appellant was held for the preparation of an information. Parsons did not testify at the preliminary hearing, but while talking with police after the hearing was over, Parsons identified appellant as the person who stabbed him. Appellant's counsel was not informed that there was a witness in the preliminary hearing room who might identify his client.

■■■ Appellant contends that Parsons' identification at the time of the preliminary hearing constitutes identification at a line up and that counsel should have been notified that such an identification was going to take place. We agree that the identification of the appellant at the preliminary hearing, without knowledge of counsel, was a violation of appellant's Sixth Amendment right to the assistance of counsel. However, appellant's assertion that the identification was unduly suggestive must be tested by the standard set out in *Commonwealth v. Brown* :

> An in-court identification following an illegal out-of-court identification is admissible into evidence if, considering the totality of circumstances, it is determined that the in-court identification had an independent origin "sufficiently distinguishable to be purged of the primary taint". *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165 (1967).

462 Pa. 578, 589, 342 A.2d 84, 90 (1975).

■■■ The independent origin of the witness's in-court identification is adequately established by the record. Parsons, the witness, was a victim of the stabbing. He testified that he saw the face of the person who stabbed him and that the area was well lighted. Fifteen days elapsed between the stabbing incident and first identification at the preliminary hearing.

The United States Supreme Court has set out the following factors to consider in determining whether an in-court identification is independent:

the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.

*United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1165 (1967). See also *Commonwealth v. Scott*, 469 Pa. 258, 269, 365 A.2d 140, 145 (Pa.1976). Here the witness was present at the incident; his original description was not inconsistent with his later identification; his statement to the police was that he could identify his attacker; he did not fail to identify the appellant after viewing him at the preliminary hearing; and only fifteen days elapsed between the alleged act and the identification made at the hearing.

Furthermore, *Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979) is dispositive of the claim that the in-court identification was not independently based. In *Ransome*, a case involving the same facts and the same witness, of appellant here raised the same issue. In *Ransome* we determined that the identification testimony offered by Parsons, the same witness as in this case, was independently based on observations that the victim made on the crime scene, and was not affected by any formal identification he may have made at the preliminary hearing.[3] In upholding the identification, this Court stated:

[W]hen viewed with the totality of the circumstances, Parsons' identification of appellant as one of the attackers was independent of the preliminary hearing identification

3. While Ransome and this defendant were not tried together, their preliminary hearings were on the same date and the circumstances surrounding the informal identification involved in both cases are identical.

and was purged of any taint attendant to the preliminary hearing identification.

*Id.* at 1383. The identification at trial, therefore, was admissible because of its independent origin.

Judgments of sentence affirmed.

EAGEN, C. J., and ROBERTS, J., concurred in the result.