541 A.2d 730

COMMONWEALTH of Pennsylvania, Appellee,

v.

Ronald WHEELER, Appellant.

Supreme Court of Pennsylvania.

Argued April 6, 1987.

Decided April 21, 1988.

Reargument Denied June 10, 1988.

104

106

Gregory F. Mondjack, Perkasie, for appellant.

Alan M. Rubenstein, Doyletown, Stephen B. Harris, Warrington, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.*

The appellant, Ronald Wheeler, was convicted of first-degree murder following a jury trial in the Court of Common Pleas of Bucks County. After further proceedings and deliberation, the jury decided in favor of imposing the death penalty. The aggravating circumstance found by the jurors was that set forth in section 9711(d)(9) of the Sentencing Code, *i.e.*, that the defendant had "a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). Upon the denial of the defendant's post-trial motions, the trial court formally imposed the judgment of sentence of death. There followed this direct appeal pursuant to section 722(4) of the Judicial Code, 42 Pa.C.S. § 722(4).

In the early morning hours of November 13, 1982, one Danny Thomas was struck down by bullets as he entered the parking lot of the Kim Graves Bar in Bristol Township, Bucks County. Thomas had just emerged from the bar in the company of his girlfriend, Ms. Etta Miller. He died at

* Reassigned to this writer 12/31/87.

the scene as a result of multiple gunshot wounds to the head and back. The shots had been fired at close range. Two days later Ronald Wheeler was arrested for the killing, and was charged with first-degree murder, possession of a instrument of crime, and possession of a firearm by a former convict.[1]

Part of the Commonwealth's case at trial included the testimony of Etta Miller, the victim's companion when he was shot. Ms. Miller positively identified Wheeler as being the gunman. Two other prosecution witnesses, Ulysses Moore and Jerome Gibson, both of whom testified they were outside the bar at the time of the shooting, also identified defendant Wheeler as the shooter. Among the items of physical evidence presented by the Commonwealth was a pair of eyeglasses, which the police had found at the scene of the crime. Testimony was produced from an optometrist who had prescribed glasses for Wheeler, and from the optician who had made them, that the glasses found at the crime scene were of the type prescribed and made for the defendant.

In further support of its case against Ronald Wheeler, the Commonwealth presented testimony revealing that the defendant sought to have one person fabricate evidence in his behalf and sought to induce another person to withhold evidence. A Mrs. Jetta Flowers, who was related to Wheeler by marriage, testified that he had asked her to create a bogus alibi for him. Ulysses Moore, who, as noted, testified to having seen the defendant shoot Danny Thomas, added that the defendant had offered him money not to testify for the prosecution.

Another element of the case against the defendant consisted of testimonial and documentary evidence showing

1. The last two of these charges were severed from the murder charge, and were subsequently heard by a judge sitting without a jury. The bench trial resulted in Wheeler being found guilty of possession of a firearm by a former convict. *See* section 6105 of the Crimes Code, 18 Pa.C.S. § 6105. For this offense he was sentenced to a term of imprisonment of from two and a half to five years. The instant appeal does not address that conviction.

that he, on various occasions before the killing, had made threats against Thomas' life. Apparently, Ronald Wheeler and the victim had known each other from a time when both were incarcerated at the State Correctional Institution at Graterford. Witnesses who had been acquainted with the two men while at Graterford testified to having heard Wheeler say in prison that he was going to kill Thomas. Also introduced into evidence by the prosecution were several handwritten letters, allegedly written by Wheeler to various people after his release from Graterford, in which he threatened to kill Thomas when the latter got out of prison. Experts from the FBI Laboratory testified that the handwriting on the letters matched the defendant's, and that the fingerprints on them were his.

The defendant's uncle, Harlist Murchison, gave testimony for the Commonwealth concerning actions and statements of Wheeler shortly before and shortly after the killing. The substance of Murchison's testimony was that, on the day of the crime, Wheeler showed him a handgun and remarked that he had "some business to take care of on the street." This witness further testified that, at some point shortly after the killing, Wheeler made an admission to him of having killed Thomas and said that he had committed the crime in return for a promise of money from some third person.

The Commonwealth's theory of the case was that the defendant, after having made several threats against the victim's life, carried them out by lying in wait for him outside the Kim Graves Bar, and deliberately and willfully shooting him to death when he emerged from that establishment in the early morning hours. Under section 2502 of the Crimes Code, 18 Pa.C.S. § 2502, a criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. The term "intentional killing" expressly includes killing by lying in wait. *Id.*

In this case the quantum of prosecution evidence indicative of the defendant's guilt was impressive, to say the least. Despite testimonial assertions by Wheeler of his

innocence, the Commonwealth's evidence clearly justified the jury in finding him guilty of first-degree murder. The test by which we determine the sufficiency of evidence is whether, accepting as true all of the Commonwealth's evidence and all reasonable inferences therefrom upon which, if believed, the fact-finder could reasonably have based its verdict, such evidence and inferences are sufficient in law to establish the elements of the crime in question beyond a reasonable doubt. *E.g., Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987); *Commonwealth v. Bradley,* 481 Pa. 223, 392 A.2d 688 (1978), *cert. denied,* 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); *Commonwealth v. Malone,* 444 Pa. 397, 281 A.2d 866 (1971).

In his appeal to this Court, Ronald Wheeler challenges his conviction and, in the alternative, the proceedings during the penalty stage of the prosecution. Needless to say, if the appellant is correct in his asserted grounds for a new trial our review need go no further.

In urging that we should order a new trial, the appellant first assigns as error the refusal of the court below to grant his pre-trial motion to suppress in-court identification of him by witness Etta Miller. That motion was based essentially on an allegation that the police had engaged in post-arrest procedures which improperly suggested to Ms. Miller that Wheeler was in fact the killer. According to the motion, the suggestiveness of those procedures would taint any later identification of the accused by that witness. The central averment of the motion to suppress was that the police, after repeatedly showing Ms. Miller photographs of Wheeler, arranged to have her see him brought in handcuffs and shackles to the preliminary hearing. The suppression court agreed that the confrontation at the preliminary hearing was improperly suggestive; as a result, the court ruled that the fact of her identification of Wheeler *at the preliminary hearing* could not be admitted at trial. However, the suppression court also found that the Commonwealth had successfully proceeded to show that Ms. Miller's ability to identify the accused as the shooter had a

basis independent of any improperly suggestive police procedures. Based on that finding, the court ruled that the witness would not be barred from identifying Wheeler at trial.

█ It is well settled that where circumstances demonstrate an independent basis for identification, even impermissibly suggestive pre-trial procedures will not bar subsequent in-court identification. *Commonwealth v. McGaghey*, 510 Pa. 225, 507 A.2d 357 (1986); *Commonwealth v. Glover*, 488 Pa. 459, 412 A.2d 855 (1980); *Commonwealth. v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979); *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975). In determining whether such an independent basis exists, consideration is to be given to the following factors: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation. *Commonwealth v. Ransome, supra*, 485 Pa. at 496, 402 A.2d at 1382, *quoting Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

█ Our review of the record convinces us that the Commonwealth had shown an independent basis for any later in-court identification of Wheeler by Etta Miller. She testified at the suppression hearing that she was standing but a few feet from the shooter when the crime took place, and that she observed his face at least momentarily. Furthermore, according to Ms. Miller, the perpetrator was a person she had also seen inside the bar prior to the shooting. Once we conclude, as we have in the instant case, that the record supports a finding of independent basis, our scope of review regarding the admissibility of in-court identification testimony is at an end. *Commonwealth v. McGaghey, supra; Commonwealth v. Glover, supra; Commonwealth v. Ransome, supra; Commonwealth v. Brown, supra.* Consequently, the appellant's challenge to the suppression ruling in question must fail.

■ Another ground asserted for a new trial is based on testimony given by two prospective jurors in the course of voir dire. One of them, a Mr. Gary McClister, testified that he had heard a conversation among some other veniremen in the jury room concerning the pending case. Mr. McClister was not very specific about what he supposedly heard in the conversation, other than saying that the discussion referred to the pending matter as being about "something ... in Bristol." Mr. McClister then became somewhat inconsistent in describing the tenor of what he heard in the conversation. At one point he testified to overhearing some people express a belief as to whether or not the defendant was guilty. At another point McClister stated that he did not hear any opinions on the subject. In any event, he did testify that his judgment had been influenced by what he heard in the jury room; for that reason he was excused for cause from serving as a juror.

Another prospective juror, a Mr. Leon Gray, also testified that he heard some panel members discussing "a homicide case." He was of the opinion, however, that the discussion had been about a case *other than the Wheeler matter.* Mr. Gray was excused pursuant to a peremptory challenge by the Commonwealth.

As noted, Gary McClister was the first source of an assertion relating to a jury-room conversation. However, by the time he was called for examination, three members of his panel had already been selected to serve as jurors in the Wheeler case. Based on McClister's testimony about the conversation, defense counsel moved for a mistrial, arguing that the three chosen jurors may have participated in or been influenced by the alleged jury-room conversation. An identical motion was made after the testimony of Leon Gray. In each instance the motion for a mistrial was denied. The appellant here maintains that those rulings exposed him to the risk of being tried by biased or otherwise partial jurors, and thus entitle him to the grant of a new trial.

■ We disagree with the premise upon which this argument rests. The trial court, in explaining its denial of the motions for a mistrial, concluded that Mr. McClister's testimony did not present any significant indicia that the alleged jury-room conversation was actually about the Wheeler case. Our review of the testimony of Mr. McClister and Mr. Gray, as well as that of the panelists who followed them, convinces us that the trial court's appraisal was correct. In addition, the record of voir dire reveals that each juror chosen was adequately questioned about having any prior knowledge of the case; and effectively examined as to his or her ability to decide the case impartially according to the evidence, free of any possible preconceived notions, impressions or opinions. The constitutional mandate for a fair and impartial jury is satisfied if prospective jurors are capable of casting aside any impressions or opinions they may have and rendering a verdict based solely upon the evidence presented at trial. *Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979); *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976). We thus hold that the court below did not err in denying the motions for a mistrial. Given our conclusion that all the chosen jurors were adequately examined as to their impartiality, we must reject the appellant's further assertion that trial counsel was ineffective in not *re-examining* the first three jurors as to whether or not they heard the alleged juryroom conversation.

■ The appellant next complains that trial counsel was ineffective in not using the testimony given by Etta Miller at the preliminary hearing to impeach her statements at trial. This assertion is meritless. Trial counsel had succeeded in having suppressed the identification testimony given by Ms. Miller at the preliminary hearing. It was reasonable for counsel to conclude that, if he resorted to Miller's preliminary hearing testimony for purposes of cross-examination at trial, he would "open the door" for the admission of the identification she made in that prior proceeding. Thus, it was reasonable for counsel, in trying to

advance the interests of his client, to avoid making references to Ms. Miller's testimony at the preliminary hearing. The assistance of counsel cannot be deemed ineffective if the particular course chosen by him had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Saxton,* 516 Pa. 196, 532 A.2d 352 (1987); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

Another claim of ineffective assistance of counsel is based on the fact that counsel had filed a motion to suppress the incriminating letters allegedly authored by Wheeler and sent to various acquaintances. The appellant's contention in this regard is that the very act of presenting the motion, which had no chance of legal success, amounted to an admission that Wheeler had written the letters. In the appellant's view, such admission excused the Commonwealth of having to prove the requisite chain of custody of the letters. This entire argument is utterly fallacious. It is difficult to see how a motion to suppress incriminating evidence can ever be prejudicial to an accused, regardless of its chances for success. Although, for purposes of the motion to suppress the letters, the accused had to acknowledge a legal interest in them sufficient to confer standing, such an admission could not have been prejudicial to him in the subsequent trial. The facts asserted by an accused to establish standing to suppress evidence are not admissible at trial, *e.g., Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and there is nothing on the record of the instant matter to indicate a violation of that rule. Unless the defendant has been prejudiced by the course chosen by counsel, there can be no finding of ineffective assistance. *Commonwealth v. Pierce, supra; Commonwealth ex rel. Washington v. Maroney, supra.*

The appellant also takes issue with the admission of evidence indicating that he had previously been an inmate at Graterford prison. That evidence, according to him, violated the general rule barring proof of prior crimi-

nality. The appellant ignores, however, that such evidence may be admitted if it is relevant to prove something other than a defendant's propensity for committing crimes. *E.g.,* *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974). The evidence here complained of by the appellant, *i.e.,* that while in prison he threatened to kill the victim, was certainly relevant to prove motive, malice or ill will. Since the challenged evidence was clearly admissible under an exception to the general prohibition, the failure of counsel to object to it could not amount to ineffective assistance. Counsel is never ineffective for declining to make a meritless objection. *E.g., Commonwealth v. Albrecht,* 510 Pa. 603, 511 A.2d 764 (1986); *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Gray,* 473 Pa. 424, 374 A.2d 1285 (1977).

In further support of his prayer for a new trial, the appellant presents various other claims, including additional assertions of ineffective assistance of counsel and complaints of prosecutorial misconduct. Those contentions, when analyzed in light of the record before us, must also be rejected as unmeritorious. We turn now to the appellant's arguments regarding the penalty stage of the proceedings.

In seeking the death penalty in this case, the Commonwealth first attempted to establish that the murder was a contract killing, one of the aggravating circumstances enumerated in section 9711(d) of the Sentencing Code ("Code"). 42 Pa.C.S. § 9711(d)(2). The Commonwealth also contended that an additional aggravating circumstance was present in the case. Relying on the fact that appellant Wheeler had been convicted previously, in 1976, of third-degree murder, the prosecution urged the jury to find as a further matter the aggravating circumstance set forth in section 9711(d)(9) of the Code. As noted, the latter provision includes as an aggravating circumstance the fact that the defendant "has a significant history of felony convictions involving the use or threat of violence to the person."

42 Pa.C.S. § 9711(d)(9). Of the two aggravating circumstances propounded by the Commonwealth as warranting imposition of the death penalty in this case, the jury accepted only the second.

One of the appellant's challenges to the imposition of the death penalty is directed to the jury's finding of an aggravating circumstance based on 42 Pa.C.S. § 9711(d)(9). According to the appellant, his prior conviction of third-degree murder could not, by itself, constitute a "significant history of felony convictions" within the meaning of the above statutory provision. In that regard, the appellant focusses on the fact that the statutory word "convictions" is plural, and asserts that a single prior conviction does not amount to the "history" contemplated by 42 Pa.C.S. § 9711(d)(9). Based on our decision in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), we must agree with the appellant's argument.

In *Commonwealth v. Goins*, this Court held that a single felony conviction for a crime of violence did not suffice to establish a "significant history" under 42 Pa.C.S. § 9711(d)(9). We reiterated that holding in *Commonwealth v. Frederick*, 508 Pa. 527, 498 A.2d 1322 (1985). Consequently, with respect to the instant case, we must conclude that the lone aggravating circumstance found by the jury cannot stand.[2] Having so concluded, we need not address the appellant's other challenges to his death sentence.

Accordingly, we hereby vacate the sentence of death and remand the record to the Court of Common Pleas of Bucks County for the imposition of a sentence of life imprisonment.

ZAPPALA, J., did not participate in the consideration or decision of this case.

2. Section 9711(d) of the Sentencing Code was amended in 1986 to increase the number of aggravating circumstances from ten to twelve. Included as one of the new aggravating circumstances is a conviction of another murder, "committed either before or at the time of the offense in issue." 42 Pa.C.S. § 9711(d)(11). However, since that amendment was subsequent to the prosecution of the instant appellant, it cannot have any bearing on our decision.

HUTCHINSON, Former Justice, did not participate in the decision of this case.

LARSEN, J., files a concurring opinion in which McDERMOTT, J., joins.

PAPADAKOS, J., files a concurring and dissenting opinion.

LARSEN, Justice, concurring.

I maintain the view that it was the legislative intent that a jury/could find that a single prior conviction for murder of the third degree qualifies as a "significant history of felony convictions involving ... violence to the person" under section 9711(d)(9) of the Sentencing Code, 42 Pa.C.S.A. § 9711(d)(9). *Commonwealth v. Goins*, 508 Pa. 270, 287–92, 495 A.2d 527 (1985) (Larsen, J., concurring and dissenting). As the majority in *Goins* disagreed with that view, and as *Goins* remains the controlling law for cases of murder of the first degree occurring prior to the effective date of the legislative amendments to the Sentencing Code, 42 Pa.C.S.A. § 9711(d)(11) and (12), (effective September 5, 1986), I am constrained to join in the result reached by the majority.

McDERMOTT, J., joins in this concurring opinion.

PAPADAKOS, Justice, concurring and dissenting.

I join with the majority in affirming Appellant's conviction of murder of the first degree, but dissent from the vacating of the death sentence. In reliance upon a discredited *Goins* decision, the majority continues to apply a legislative "intent" which the legislature has disavowed.

The issue is the correct meaning of aggravating circumstance 9, 42 Pa.C.S. § 9711(d)(9), which reads, "the defendant has a significant history of felony convictions involving the use or threat of violence to the person." In *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), the majority determined that the legislature intended that there be "more than one prior violent-felony convictions."

In *Commonwealth v. Goins, supra,* the defendant had been convicted of murder of the first degree for claw hammering to death his wife. At the penalty stage, following this conviction, the Commonwealth introduced evidence that the defendant had previously been convicted of murder of the second degree (the present equivalent of third degree murder). In fact, this prior conviction was stipulated to. Being faced with two felony killings, the jury determined that defendant had a significant history of felony convictions involving the use or threat of violence to the person, found the existence of aggravating circumstance 9 (42 Pa.C.S. § 9711(d)(9)) and determined that the sentence of death be imposed upon the defendant.

The majority found "... it to have been the manifest intent of the General Assembly to include as an aggravating circumstance more than one *prior* violent-felony conviction, ..." (emphasis added) in establishing a "significant history." Thus, the majority ignored the defendant's killing of his wife and exercised legislative prerogatives by adding the word "prior" to aggravating circumstance 9.[1] Since defendant had only one violent-felony conviction *prior* to the time of the first degree murder conviction in issue, the majority concluded that the element of "convictions" appearing in aggravating circumstance 9 was not met and thus vacated the sentence of death and remanded for the imposition of a life sentence.

This determination by the majority in *Goins* did not create "law" needed to fill a void left by the legislative enactment. Rather, it was an erroneous interpretation of the law as enacted by the legislature. Before the ink was dry on the *Goins* decision, the legislature amended the list of aggravating circumstances to correct the error of *Goins.* It set forth in no uncertain terms, that the current murder of the first degree conviction shall be included with any other murder conviction to form an aggravating circumstance (42 Pa.C.S. § 9711(d)(11)).

1. The same majority has again amended the statute by adding the word "pending" in aggravating circumstance 5. See, *Commonwealth v. Caldwell,* 516 Pa. 441, 532 A.2d 813 (1987).

118

I believe the legislature has corrected the misinterpretation of the *Goins* decision and that we should overrule *Goins* and affirm the sentence of death.