J-S50022-20
J-S50023-20
J-S50024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BARROW | : | |
| | : | |
| Appellant | : | No. 1024 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004038-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BARROW | : | |
| | : | |
| Appellant | : | No. 1076 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004036-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BARROW | : | |
| | : | |
| Appellant | : | No. 1077 EDA 2020 |

J-S50022-20
J-S50023-20
J-S50024-20

Appeal from the Judgment of Sentence Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004037-2016


BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 06, 2021**

Appellant, James Barrow, appeals from the judgments of sentence entered in the above-captioned matters.  Because the issue in each case is identical, the crimes charged in each separate bill of information were tried together in Appellant's consolidated nonjury trial, and Appellant has filed a single brief with our permission, we address the appeals in a single Memorandum.  We note that Appellant's appointed counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Appellant has not filed a response to counsel's petition to withdraw.  Following our review, we grant counsel's petition to withdraw and affirm the judgments of sentence.

The trial court summarized the procedural history of the cases, as follows:

On March 16, 2016, [Appellant] was arrested and charged with three separate cases of robbery, conspiracy, possessing the instrument of a crime and violations of the Uniform Firearms Act.

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

Appellant was bound over for trial on all charges following an April 25th preliminary hearing. [Appellant] waived his right to a jury [trial] and trial began on October 19, 2019. On October 25, 2019, [Appellant] was convicted of three counts of robbery and conspiracy[1] but acquitted of all other charges. Appellant was subsequently sentenced to six to twenty years' incarceration on each charge, running concurrently with each other. Post-Sentencing Motions were filed on November 4, 2019 and denied on March 6, 2020. Appellant filed a timely notice of appeal as well as statement of matters complained of on appeal.

\* \* \*

On February 1, 2016, [Appellant] phoned the Wilmington, Delaware office of the F.B.I. seeking to spe[a]k to someone about some robberies that took place in Philadelphia. Agent Scott Duffey returned [Appellant's] call and obtained some preliminary information about a robbery that took place in February of 2015. Two days later, Agent Duffey and Philadelphia Police Detective Dan Grassi met [Appellant] at the location [A]ppellant had provided them. Upon their arrival, [Appellant] walked over to the police vehicle and willingly went with the agents for an interview. After [Appellant] was given his Miranda[2] warnings, he discussed his involvement in three Philadelphia robberies. (N.T. 10-21-2019, pp. 10-28). At trial, witnesses from each one of the robberies testified and surveillance video of each robbery was introduced. (N.T. 10-23-2019, pp. 6-22, 24-36, 42-50). Both F.B.I. Agent Duffey, and Philadelphia Police Detective Robert Daly testified that they did not have any concerns that [Appellant] had any mental health issues, could not understand the questions, or was under the influence of drugs or alcohol during either of their interviews with him. (N.T. 10-21-2019, pp. 26-27; N.T. 10-23-2019, pp. 80-104).

Trial Court Opinion, 6/8/20, at 1–3 (footnote omitted).

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii) and 903, respectively.

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Before we address any question raised on appeal, we must resolve appellate counsel's request to withdraw. *Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Id.* at 1032 (citation omitted).

In addition, in *Santiago* our Supreme Court stated that an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel filed the required petition averring that after a conscientious review of the record, he found the appeal to be wholly frivolous. Motion

- 4 -

Seeking Permission to Withdraw as Counsel, 7/6/20, at ¶ 3. He filed an *Anders* brief discussing the issue that Appellant wanted to pursue and concluded further that no other issues could reasonably support the appeal. *Anders* Brief at 13, 15. He provided Appellant with copies of his petition and brief and advised Appellant that he could retain new counsel or proceed *pro se* and raise additional arguments. Letter to Appellant, 7/6/20. Thus, counsel complied with the technical *Anders* requirements.

Also, counsel's brief is sufficiently compliant with *Santiago*. The brief sets forth the history of this case and refers to the notes of testimony, pertinent case authority, and sets forth an issue of arguable merit. *Anders* Brief at 4–18. Further, the brief advances counsel's conclusion that the appeal is frivolous and the reason for counsel's conclusion. *Id.* at 15–17. Accordingly, we proceed to examine the issue counsel identified in the *Anders* brief, and then we conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1195 (Pa. Super. 2018) (*en banc*).

Counsel identified the following issue in his *Anders* brief:

1. The Honorable Court committed an abuse of discretion by denying Appellant's motion for a new trial on weight of the evidence grounds.

*Anders* Brief at 15 (unnecessary capitalization omitted).

First, we must determine if Appellant's challenge to the weight of the evidence was properly preserved. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *Commonwealth v. Akrie*, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant properly preserved his weight-of-the-evidence claim by raising the issue in a timely post-sentence motion on November 4, 2019.

We have held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

***Commonwealth v. Williams***, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations

omitted)).   A trial court's determination that a verdict was not against the

weight of the evidence is "[o]ne of the least assailable reasons" for denying a

new trial.   ***Commonwealth v. Colon–Plaza***, 136 A.3d 521, 529 (Pa. Super.

2016) (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013)).   A

verdict is against the weight of the evidence where "certain facts are so clearly

of greater weight that to ignore them or to give them equal weight with all the

facts is to deny justice."   ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa.

Super. 2003) (quoting ***Widmer***, 744 A.2d at 751–752).   "[W]e do not reach

the underlying question of whether the verdict was, in fact, against the weight

of the evidence . . . .   Instead, this Court determines whether the trial court

abused its discretion in reaching whatever decision it made on the motion."

***Williams***, 176 A.3d at 312.

> Appellant suggests the verdicts shock the conscience:

> because the testimony of the Commonwealth's eyewitnesses contradicted the contents of [A]ppellant's statements to authorities, [A]ppellant's statements themselves contradicted each other, the evidence demonstrated that [A]ppellant did not act voluntarily when he gave his statements to authorities, and the statements were unreliable and should not have been admitted in evidence or considered by the trial court when deliberating on a verdict.

***Anders*** Brief at 15.   As pointed out by the Commonwealth, Appellant's

potential challenge to the weight of the evidence is asserted by "diminishing

the record by attacking the admissibility of [Appellant's] statements" to police. Commonwealth's Brief at 10. Thus, it appears Appellant is suggesting the verdict was shocking because Appellant's *Miranda* waiver was allegedly invalid. In rejecting Appellant's weight-of-the-evidence challenge, the trial court addressed both the weight of the evidence and the voluntariness of Appellant's statements. We rely upon the trial court's explanation, which provided as follows:

> F.B.I. Agent Scott Duffey was the first witness presented by the Commonwealth, who testified that on February 1, 2016, [A]ppellant phoned the Wilmington office of the F.B.I wanting to speak with someone about some robberies. (N.T. 10-21-2019, pp. 10-15). Agent Duffey returned [Appellant's] call and obtained some preliminary information about the robbery of Elzina Bar in Philadelphia in February of 2015. (N.T. 10-21-2019, pp. 13-15). On February 3, 2016, Agent Duffey met with [A]ppellant and Detective Dan Grassi of the Philadelphia Police Department and [they] transported him to the Delaware State Police Criminal Investigation Squad where a mirandized video-recorded statement was taken from [Appellant]. (N.T. 10-21-2019, pp. 14-21). Appellant confessed to the robbery of Elzina Bar, Vincent's Pizza Shop and Jim's Steaks, all in Philadelphia in 2015. (N.T. 10-21-2019, pp. 12-28).

> Leon Singleton testified that on February 2, 2015, at approximately 11:00 p.m. he was a customer in the Elzina Bar at 57th and Master Streets in Philadelphia when the bar was robbed. Mr. Singleton recalled that two masked men, one with a pistol, entered the bar, shouting at everyone to get down on the ground. One of the crooks jumped over the bar stealing the proceeds from the cash register while the other took the valuables from the patrons on the floor. (N.T. 10-23-2019, pp. 6-15). The incident was captured on the bar's surveillance system and presented in court as Commonwealth Exhibit 5. (N.T. 10-23-2019, pp. 9-11, 19-22).

Alec Philador testified that he was working at Vincent's Pizza at 6452 Lansdowne Avenue in Philadelphia in the early morning hours of March 7, 2015, when two masked individuals, one with a handgun, entered the store and robbed the establishment. At least eight people were present at the time. (N.T. 10-23-2019, pp. 24-29). Once again, surveillance video, inside and outside the business, captured the entire incident and was presented in court as Commonwealth Exhibit 9. (N.T. 10-23-2019, pp. 3-36).

Rodney Holmes came to court to testify that about 1:00 a.m. on March 7, 2015, he was working at Jim's Steaks at 431 North 62nd Street in Philadelphia when two men entered the store, both brandishing handguns, shouting for the employees to get on the floor. Mr. Holmes was ordered to open the register from which one of the robbers took all the money and ran out of the store. (N.T. 10-23-2019, pp. 42-48). Again, the incident was recorded on video and presented in court as Commonwealth Exhibit 13 (N.T. 10-23-2019, pp. 46-50).

Philadelphia Police Detective Robert Daly interviewed [Appellant] on February 4, 2016, with Detective Conway recording [A]ppellant's mirandized confession. Unbeknownst to the detectives the interview was being videotaped as well and was presented in court as Commonwealth Exhibit 15. (N.T. 10-23-2019, pp. 76-89). The detective testified that there did not appear to be any mental health issues, that [Appellant] seemed to understand the detectives' questions, was not under the influence of drugs or alcohol, did not ask for a lawyer and no promises or guarantees were made to him. (N .T. 10-23-2019, pp. 80-104).

Carol Armstrong, a neuropsychologist testifying on behalf of [Appellant], stated that [Appellant] suffered from an intellectual disability and neuropsychiatric illness that would have precluded him from voluntarily surrendering his *Miranda* rights, despite measuring [A]ppellant's IQ at 75. (N.T. 10-24-2019, pp. 6-26). Dr. Armstrong did not look at the videotape of [Appellant's] confession when making the evaluation of whether [Appellant] had voluntarily waived his *Miranda* rights. Additionally, when questioned about the fact that it was [Appellant] who initiated the contact with law enforcement and therefore was not coerced into his confession, Dr. Armstrong claimed that she did not know why

he had initiated the contact, or his motivations for doing so. (N.T. 10-24-2019, pp. 41-43).

In rebuttal[,] the prosecution presented the expert testimony of Kirk Heilbrun, a psychologist with a forensic specialization. Dr. Heilbrun, in addition to interviewing [Appellant] and studying the video of [Appellant's] waiver of his rights and subsequent confession, administered two versions of the Brief Symptom Inventory tests, the Minnesota Multiphasic Personality Inventory as well as the Miranda Rights Comprehension Instrument. (N.T. 10-25-2019, pp. 6-41). This court found Dr[.] Heilbrun to be substantially more credible than Dr. Armstrong and his conclusions, to a reasonable degree of scientific certainty much more persuasive.

This court applied the appropriate standards when reviewing [Appellant's] claim that the verdict was against the weight of the evidence. Having reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits, this court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict. Accordingly, this claim of [Appellant] is without merit.

\* \* \*

[Appellant] claims his statements should not have been admitted into evidence as the testimony presented was inadequate to show that the statement was voluntary. (Statement of Matters Complained of on Appeal, p. 1; Post-Sentencing motions, p. 4). To the contrary, the prosecution presented an abundance of evidence that the statements were voluntary, not only the testimony of the detectives who took the statements, but the videotapes of the statements by Agent Duffey as well as Detective Daly were presented so the factfinder could observe [A]ppellant as he confessed to the crimes. It was crystal clear that [Appellant] knowingly, intelligently and voluntarily made his statements to the authorities.

If [Appellant] is relying upon the findings of Dr. Carol Armstrong's conclusion that [Appellant] was incapable of voluntarily waiving his *Miranda* rights, this court made a determination that Dr. Armstrong was less persuasive than Dr. Heilbrun, who concluded that [Appellant's] statements were voluntary. Dr. Armstrong administered an I.Q. test, recording [Appellant's] I.Q. as 75, and averred that such a low I.Q. made him incapable of understanding what rights he was giving up. Dr. Armstrong did not review the videotapes of [Appellant's] interviews with either Agent Duffey or Detective Daly, and did not conduct a "Grisso" test,[3] which assesses the understanding and appreciation of the *Miranda* rights[,] although [Dr.] Heilbrun did. Having heard the testimony of each expert, this court found Dr. Heilbrun's testimony and opinion much more compelling, and comprehensive.

The law is clear that it is for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The factfinder may believe all, part or none of the evidence. An appellate court may not re-weigh the evidence nor substitute its judgment [f]or that of the factfinder. *Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015) (citing *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super.2006)).

Further, the fact that a defendant has a low I.Q. does not in and of itself render his confession involuntary. *Commonwealth v. Glover*, 488 Pa. 459, 466, 412 A.2d 855, 858-859 (1980); *Commonwealth v. Crosby*, 464 Pa. 337, 344-345, 346 A.2d 768, 772 (1975). As for Dr. Armstrong's assertion that she did not know what compelled [Appellant] to initiate contact with law enforcement or his motivations to confess, "neither the Pennsylvania nor the United States Constitution[s] protect a defendant from statements which originate entirely from internal compulsion resulting from a mental disease." *Commonwealth v. Bracey*, 501 Pa. 356, 369, 461 A.2d 775, 782 (1983). This court had the opportunity to view the witnesses and to scrutinize their testimony. The record clearly discloses ample basis for this court's

---

[3] The Grisso test refers to Thomas Grisso's Instruments for Applied Assessment of Understanding of Miranda Rights. **Commonwealth v. Winter**, 159 A.3d 1017, 835 MDA 2016 (Pa. Super. filed December 29, 2016) (unpublished memorandum at *2).

- 11 -

determinations and as such[, this court] found [Appellant's] waiver of his *Miranda* rights to be knowing, intelligent and voluntary and as such, [A]ppellant's claim is without basis.

Trial Court Opinion, 6/8/20, at 5–10 (footnote omitted).

We reiterate that our review is not a reassessment of the weight of the evidence; it is for an abuse of discretion. **Cash**, 137 A.3d at 1270; **Commonwealth v. Ferguson**, 107 A.3d 206, 213 (Pa. Super. 2015). For the reasons set forth above, we discern no abuse of discretion in the trial court's denial of a new trial based on the weight of the evidence.

Finally, we have independently reviewed the record in order to determine if counsel's assessment about the frivolous nature of the present appeal is correct. **Yorgey**, 188 A.3d at 1195. After review of the issues raised by counsel and our independent review of the record, we conclude that an appeal in this matter is frivolous. Accordingly, we grant counsel's petitions to withdraw and affirm the judgments of sentence.

Petitions to withdraw of John Belli, Esquire, granted. Judgments of sentence affirmed.

*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 1/6/2021*

- 12 -