351 S.E.2d 431

**STATE of West Virginia**

v.

**William Isaac DAILEY.**

No. 16997.

Supreme Court of Appeals of West Virginia.

Dec. 16, 1986.

Frank Armada, Poca, for appellant.

Silas Taylor, Deputy Atty. Gen., State Capitol, Charleston, for appellee.

PER CURIAM:

This is an appeal of a first degree sexual assault conviction from the Circuit Court of Calhoun County. The defendant assigns several errors, one of which is that because of his senility, IQ, and mental condition, his confession was not the product of a knowledgeable and voluntary waiver of his Fifth Amendment rights.

The circumstances surrounding the defendant's confession are as follows. After the eight-year-old victim had accused the defendant of sexually assaulting her,[1] Officer Charles McDonald of the Department of Public Safety, along with Officer William Cordle, went to the defendant's residence around 10:30 a.m. on February 22, 1984. The defendant's two sons were present when the officers arrived and they were informed, out of the presence of the defendant, of the nature of the charge. The officers requested the defendant and his two sons to accompany them to the State police barracks. The defendant was

---

1. The alleged incident occurred in the summer of 1982 and was initially investigated by the parents of the victim, who had obtained the services of an attorney and private investigator.

In February of 1984, the victim gave a tape-recorded statement to a State police officer concerning this incident.

approximately seventy-four years of age at that time and was acquainted with the victim's family.

When they arrived at the State police barracks, the defendant was left in the reception area and the two sons accompanied the officers into a back room. There, they were again informed of the nature of the charge against their father and of the officers' desire to interrogate him.

There is some disagreement over the details of this conversation with the police officers. The sons recall the officers stating that they had a strong case, but that the victim's family was not pushing the matter and the officers did not think the charge would amount to much. The sons recall one of the officers saying that he would see that their father would get some help as he knew the judge and the prosecutor. Mention was also made by the sons at this time that their father was senile and had a hearing problem. These facts were acknowledged by Officer McDonald at the suppression hearing. The officer denied making any promises of leniency.

The sons were then permitted to talk privately with their father. One of the sons testified he was upset over the criminal charge and spoke in a harsh manner to his father, advising him to cooperate and sign anything the officers asked him to sign. There was testimony that these remarks upset the defendant and caused him to cry.

After this conversation, the two sons left the room and the officers began to give the defendant his *Miranda* rights, utilizing a form which the defendant signed. After interrogating the defendant for an hour and twenty minutes, Officer McDonald obtained a written question and answer statement which was written out by Officer McDonald.

At the suppression hearing on the defendant's confession, the deposition of Officer McDonald was introduced. In the deposition, he stated that he seated himself next to the defendant and spoke in a loud clear voice and believed the defendant understood his questions. He also indicated that there were some occasions when the defendant did not quite understand what was being asked and that several times the defendant began to cry.

Three doctors produced evidence with regard to the defendant's mental competency. There was disagreement over whether the defendant was mentally competent to stand trial. However, two of the doctors were of the view that because of the defendant's severe hearing loss, senility, and reduced IQ that the defendant could not make an intelligent and voluntary waiver of his rights.

A Dr. William Fremouw, who had administered a number of psychological tests, observed that the defendant had a passive personality which would make him deferential to anyone in authority.

Another examiner, a Dr. D.H. Webb, III, a psychiatrist, found the defendant to have a number of physical disorders in addition to his severe hearing loss, senility, and low IQ of 77. These included bilateral conjunctivitis and cataracts, including double vision, possibly secondary to cranial nerve abnormality. He also believed the defendant to have a moderately severe obstructive pulmonary disease with an atherosclerotic heart disease including arrhythmias.

The defendant was also found to have chronic gastroenteritis, an abnormal liver function, and genitourinary diseases. Dr. Webb was also of the view that the defendant had central nervous system damage, as well as organic brain damage. He was of the view that the defendant was not only incompetent to stand trial, but could not have given a valid waiver of his rights.

Dr. H.C. Haynes found the defendant competent to stand trial. With regard to the defendant's ability to make a voluntary statement, he stated that the defendant was a "man of limited education, lacking in sophistication, would have been frightened and would probably have had difficulty reading any handwritten statements, and certainly would have had difficulty hearing all that was said unless there were special efforts made to communicate with him in an audible fashion, verifying that he understood what he was being told."

In several cases we have been confronted with the question of whether a defendant possessed sufficient mental capacity to voluntarily and intelligently waive his *Miranda* rights and have set this general principle in Syllabus Point 1 of *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977):

"Confessions elicited by law enforcement authorities from persons suspected of crimes who because of mental condition cannot knowledgeably and intelligently waive their right to counsel are inadmissible."

In *State v. Mollohan*, 166 W.Va. 60, 272 S.E.2d 454 (1980), we found the defendant, who was found to be mentally retarded having an overall IQ of 60, not to have made a voluntary confession, stating in its single Syllabus:

" 'Courts indulge every reasonable presumption against waiver of a fundamental constitutional right and will not presume acquiescence in the loss of such a fundamental right.' Syl. pt. 2, *Browning v. Boles*, 149 W.Va. 181, 139 S.E.2d 263 (1964)."

The defendant in *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981), was found to have an organic brain disease, a low IQ, and a second-grade reading level. We concluded that he was incapable of voluntarily relinquishing his *Miranda* rights. A similar result was reached in *State v. Kelley*, 168 W.Va. 698, 285 S.E.2d 457 (1981), based upon expert testimony primarily premised on the defendant's low IQ. *See also State v. Jackson*, 171 W.Va. 329, 298 S.E.2d 866 (1982); *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982).[2]

In this case, the psychiatric and psychological evidence clearly establishes that the defendant was incapable of knowingly and voluntarily waiving his rights. The

defendant was possessed of low to low average intelligence with senility, an organic brain disorder, depression, and a number of physical illnesses which impaired his health. The defendant's severe hearing loss made it difficult for him to understand others. All the evidence supports the conclusion that he was incapable of making an intelligent and voluntary waiver of his rights under our case law.

The admission of the defendant's statement constitutes prejudicial error and requires a reversal of the defendant's conviction.[3] Accordingly, we do hereby reverse and remand this case to the Circuit Court of Calhoun County for a new trial.

Reversed and Remanded.

---

**2.** We do not believe our view on the question of waiver is inconsistent with that of the United States Supreme Court in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473, where the Supreme Court found that the defendant's psychosis, under the particular facts of that case, did not affect his ability to waive his *Miranda* rights.

**3.** The defendant's other assignments of error are that the court committed error in consolidating the indictments for purposes of trial and that it erred in not permitting comment or instruction as to the potential sentences which could be imposed for the crime in question. We find these to be without merit.