522 A.2d 63

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael CEPHAS.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1986.

Filed March 4, 1987.

Sarah Vandenbraak, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Jules Epstein, Assistant Public Defender, Philadelphia, for appellee.

Before WICKERSHAM, OLSZEWSKI and BECK, JJ.

BECK, Judge:

The Commonwealth appeals an order granting a suppression motion. The court suppressed appellee's statements after finding that appellee did not knowingly waive his privilege against self-incrimination. We affirm.

Appellee was arrested on October 7, 1983 and charged with rape, indecent assault, indecent exposure, unlawful restraint, terroristic threats, and simple assault. He moved to suppress two statements made to police during custodial interrogation. After a hearing, the motion was granted. The Commonwealth petitioned the court to reconsider. The court vacated its order pending reconsideration. The court denied the petition and reinstated its order granting the motion to suppress. This timely appeal followed.

Initially, we note that we have jurisdiction of this appeal from a pre-trial suppression order because the Commonwealth certified in good faith that the order terminated or substantially handicapped its prosecution. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

Appellee was arrested on the basis of the victim's description. He was taken to the Sex Crimes Unit of the Philadelphia Police. At the time of his arrest, appellee was a street person living in an alley near his foster family's home. He had a long history of mental illness and hospitalization for this illness. He had consistently been diagnosed as a schizophrenic. His most recent hospitalization was about two weeks before his arrest after he was seen in a tree near an elementary school screaming at the school children and yelling for the principal to meet his demands.

Appellee was known to the police to be suffering from mental illness. When the arresting officers came to observe the alley where appellee lived, his foster sister begged the officer to find help for appellee and to have him put away somewhere for his mental illness.

Upon his arrival at the Sex Crimes Unit, appellee was interviewed for background information. He was placed in handcuffs in a small detention room. He exhibited bizarre and psychotic behavior. The entire time he was in the detention room, he kicked the walls and the door, and he kept yelling inane comments, including that he was Ed Rendell's son and that he had dinner with Mr. Rendell the night before at Mr. Rendell's home. Mr. Rendell is the former District Attorney of Philadelphia and he is white. Appellee is black.

Appellee was initially interrogated in an office by a detective who knew that appellee suffered from mental illness. During this interrogation, appellee acted childishly. He refused to sit unless given a cigarette or soda and cookies. The detective ceased the interrogation and returned appellee to the detention room where appellee continued his bizarre behavior.

Appellee was interrogated again and he continued to display his childlike behavior. He was read the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he made incriminating statements. The court found that the interrogating detective knew that a statement was essential to the prosecution of the case. The victim had been unable to make a positive photo identification of appellee after his arrest. The court found that the detective skillfully manipulated appellee through a process of reward and punishment to make the statements.

At the hearing on the motion to suppress, the Commonwealth presented an expert who testified that appellee was capable of understanding his *Miranda* warnings and that he was capable of knowingly waiving his Fifth Amendment

privilege against self-incrimination. Appellee presented two experts who testified to the contrary.

The court found after reviewing this testimony that appellee was incapable of understanding the significance of the *Miranda* warnings and of making a competent waiver of his right to remain silent or of his right to have counsel present. The court accordingly concluded that the Commonwealth did not meet its burden to show a knowing waiver of the Constitutional right.

The Commonwealth contends that appellee voluntarily chose to speak after receiving *Miranda* warnings. The court, on the other hand, found that appellee did not voluntarily waive *Miranda;* it viewed his confession as the product of a deliberate effort on the part of the police detective to exploit appellee's mental weakness. We need not resolve this dispute. Regardless of whether a waiver of *Miranda* is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing and intelligent.*

> *Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived.

*Moran v. Burbine,* 475 U.S. 412, ——, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986) (citations omitted). *See also Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981); *Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *Commonwealth*

*v. Scarborough,* 491 Pa. 300, 312–313, 421 A.2d 147, 153 (1980); *Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973). Moreover, in reviewing an order granting a suppression motion, we are bound by the suppression court's findings of fact if the findings are supported by competent evidence. *Commonwealth v. Hackney,* 353 Pa. Super. 552, 510 A.2d 800 (1986).

With these principles in mind, we affirm the suppression court. The court found that appellee suffered from chronic undifferentiated schizophrenia and that this mental illness prevented him from understanding the *Miranda* warnings. The court also found that appellee was incapable of making a knowing and intelligent waiver of his privilege against self-incrimination. These findings are supported in the record by the testimony of Dr. Berman, appellee's expert. Dr. Berman based his opinion on a diagnosis of appellee after a personal interview and on appellee's previous mental health history. Dr. Berman's qualification as an expert was not challenged. Therefore, there is competent evidence to support the court's findings. Accordingly, the court correctly concluded that the Commonwealth failed to prove that appellee knowingly and intelligently waived his privilege against self-incrimination. We acknowledge that a Dr. Schwartzmann testified for the Commonwealth and disputed Dr. Berman's findings. However, this testimony only created a credibility issue. It is exclusively the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Neely,* 298 Pa.Super. 328, 340–341, 444 A.2d 1199, 1205 (1982), *overruled on other grounds, Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983).

Finally, the Commonwealth contends that this case is controlled by *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In *Connelly,* a mentally ill defendant waived his *Miranda* rights because he believed that he was compelled to do so by the "voice of God." *Id.* at ——, 107 S.Ct. at 519, 93 L.Ed.2d at 480. The United

States Supreme Court held that under the federal constitution this waiver would not be found to be involuntary in the absence of misconduct on the part of government officials. The Court, however, did not purport to decide whether Connelly's waiver was knowing and intelligent. *See Id.* at ― n. 4, 107 S.Ct. at 524 n. 4, 93 L.Ed.2d at 487 n. 4 (majority opinion) and at ― n. 5, 107 S.Ct. at 525 n. 5, 93 L.Ed.2d at 488 n. 5 (Brennan, J., dissenting). This remains a distinct and independent requirement for the admission of a confession into evidence. *See Colorado v. Spring,* ― U.S. ―, ―, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987).

In summary, federal law requires that a suppression court undertake a two step inquiry into the validity of a *Miranda* waiver. The court must first determine whether the waiver was voluntary in the sense of being the result of an intentional choice on the part of a defendant who had not been subject to undue governmental pressure. The court must then focus on cognitive factors to determine if the waiver was knowing and intelligent—i.e. whether the defendant was aware of the nature of the choice that he made by giving up his *Miranda* rights.

In the case sub judice, the trial court found on the basis of credible evidence that appellee's confession was not made knowingly because he was incapable of comprehending the meaning of the *Miranda* warnings at the time he was interrogated. Accordingly, we affirm the suppression order. *Cf. State v. Daily,* 351 S.E.2d 431 (W.Va.1986) (senile defendant with low intelligence and hearing loss did not knowingly waive *Miranda* ).

Order affirmed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

Though agreeing with the majority's disposition of this particular case, I write separately to emphasize that this decision is limited to the facts of this case. The majority's holding does not establish a per se rule that an accused is incapable of waiving his constitutional rights whenever he

asserts that he is suffering from a mental illness. Both this Court and our Supreme Court have recognized that the mental or physical deficiencies of an accused are not conclusive evidence of an accused's inability to waive his constitutional rights. *See Commonwealth v. Glover*, 488 Pa. 459, 412 A.2d 855 (1980) (there is no per se rule of inability to waive constitutional rights based on mental deficiencies); *Commonwealth v. Neely*, 298 Pa.Super. 328, 444 A.2d 1199 (1982) (a defendant may be suffering from a mental illness and still be capable of waiving his constitutional rights).

Trial judges, consequently, should be more wary of concluding that an accused is incapable of waiving his constitutional rights merely because he suffers from a mental illness. The trial judge must thoroughly examine all the circumstances surrounding the particular case to determine if the accused made a knowing and intelligent waiver. *See Glover, supra.*