J-A22029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NATHAN LEE SKIDMORE, | : | |
| | : | |
| Appellant | : | No. 2113 MDA 2013 |

Appeal from the Judgment of Sentence Entered October 29, 2013,
In the Court of Common Pleas of Fulton County,
Criminal Division, at No. CP-29-CR-0000032-2013.

BEFORE:  PANELLA, SHOGAN and FITZGERALD*, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 08, 2014**

Appellant, Nathan Lee Skidmore,[1] appeals from the judgment of sentence entered following his conviction of six counts of robbery, one count of theft, and one count of possession of a controlled substance.[2]  We affirm.

The trial court summarized the history of this case as follows:

[Appellant] was charged with three counts of robbery threatening serious bodily injury,[2] three counts of robbery

---

* Former Justice specially assigned to the Superior Court.

[1] We note that certain court documents list Appellant's first name as Nathan, and other documents list his name as Nathen.

[2] Although in his notice of appeal Appellant purports to appeal from the order denying his pretrial motion *in limine*, the appeal properly lies from the judgment of sentence because pretrial orders denying a defendant's motion to suppress evidence are interlocutory and not appealable. **Commonwealth v. Strong**, 825 A.2d 658, 667 (Pa. Super. 2003). Therefore, we have amended the caption accordingly.

threatening to commit any felony of the first or second degree,[3] three counts of robbery fear of immediate bodily injury,[4] three counts of robbery by force,[5] three counts of terroristic threats,[6] one count theft by unlawful taking or disposition,[7] and one count possession of a controlled substance[8] on February 3, 2013 related to an incident at MacDonald's Pharmacy on February 2, 2013. The Information filed by the Fulton County District Attorney on February 14, 2013, did not include the three counts of robbery fear of immediate bodily injury, the three counts of robbery by force, or the three counts of terroristic threats. On February 19, 2013, [Appellant] signed a waiver of arraignment and pled guilty to one count of robbery threatening serious bodily injury. On March 3, 2013, [Appellant] filed a Motion to Withdraw Plea of Guilty.[9] The Motion to Withdraw Plea was granted on April 17, 2013. The trial date was set for September 25 and 26, 2013, before Judge Angela R. Krom and the jury was impaneled on July 22, 2013.

[2] 18 Pa.C.S. § 3701(a)(1)(ii).

[3] 18 Pa.C.S. § 3701(a)(1)(iii).

[4] 18 Pa.C.S. § 3701(a)(1)(iv).

[5] 18 Pa.C.S. § 3701(a)(1)(v).

[6] 18 Pa.C.S. § 2706(a)(1).

[7] 18 Pa.C.S. § 3921(a).

[8] 35 [P.S.] § 780-113(a)(16).

[9] It appears that even though [Appellant] was represented by Attorney Harper, he filed a *pro se* Motion to Withdraw Plea of Guilty. Thereafter, another Motion to Withdraw Plea of Guilty was filed on April 9, 2013 by Attorney Harper.

[Appellant] filed a Motion in Limine on September 12, 2013[10] to suppress the written statement obtained on February 2, 2013 by the Pennsylvania State Police. [Appellant] asserts that at the time the confession was obtained he was in a

confused and less than lucid state of mind as the result of being struck in the head by a metal pipe the morning of the interrogation. *Motion* ¶¶ 4, 8. [Appellant] alleges that despite knowledge of [Appellant's] head injury and his confused mental state, troopers proceeded to obtain [Appellant's] confession. *Motion* ¶ 9. Additionally, the written statement was obtained approximately five hours after [Appellant] had been taken into custody and before his preliminary arraignment. *Motion* ¶¶ 1, 5. [Appellant] asserts that based on the totality of the circumstances the confession was not voluntary and should be suppressed. *Motion* ¶¶ 10, 11.

> [10] A Motion in Limine Amended was filed on September 24, 2013. The Motion in Limine Amended addressed the late filing of the Motion in Limine, otherwise the content is the same as the Motion in Limine.

The Commonwealth filed an Answer to [Appellant's] Motion in Limine on September 20, 2013. The Commonwealth denied that [Appellant] has grounds to have the written statement suppressed. *Answer* ¶ 1. The Commonwealth acknowledged that [Appellant] appeared to be under the influence of drugs and had difficulty focusing while writing the custodial written statement; however, [Appellant] appeared to be oriented and coherent, and willingly admitted his guilt. *Answer* ¶ 6. The Commonwealth asserted that [Appellant's] custodial written statement was voluntary, that he received Miranda warnings, and that in the document itself [Appellant] acknowledges that he understood his rights and that he gave his statement voluntarily. *Answer* ¶ 4. The Commonwealth asserts that [Appellant's] statement was voluntary, notwithstanding that [Appellant] was suffering from an injury or under the influence of drugs, as [Appellant's] interrogation was not so manipulative or coercive that it deprived [Appellant] of the ability to make a free and unconstrained decision to confess. *Answer* ¶ 9.

Based on the Court's schedule, a hearing on the motion was held immediately before the trial began. At the hearing Pennsylvania State Police Trooper Michael A. Sprague ("Trooper Sprague"), Pennsylvania State Police Trooper Timothy Daniel Lear ("Trooper Lear"), and [Appellant] testified. Trooper

Sprague testified to [Appellant's] demeanor on February 2, 2013. Trooper Sprague spoke to [Appellant] at his home and the police station and described [Appellant] as very hyper, as if he had drank several cups of coffee. *N.T.* p. 4. According to Trooper Sprague, [Appellant] did not exhibit any behavior that suggested he was not comprehending what was occurring. *N.T.* p. 4-5. Within thirty minutes of being brought back to the interview room, [Appellant] gave a verbal confession. *N.T.* p. 7. Trooper Sprague testified that he did not threaten or intimidate [Appellant], nor did he offer him leniency in exchange for his cooperation. *N.T.* p. 8. Trooper Sprague was unable to testify regarding the written statement as his shift was over and he went home shortly after [Appellant] had given a verbal confession. *N.T.* pp. 8, 10-11.

Trooper Lear also testified that [Appellant] was talkative and that he did not appear to be impaired in any way. *N.T.* p. 16-17. Although Defendant attempted to negotiate lenient treatment in exchange for providing information about drug dealers in the area, Trooper Lear testified that he did not threaten, coerce, or promise [Appellant] leniency. *N.T.* p. 18. Trooper Lear was involved in obtaining a written custodial statement from [Appellant]. Trooper Lear testified that he initially left [Appellant] alone in the interrogation room to complete the written custodial statement. *N.T.* p. 19. Trooper Lear periodically checked on [Appellant] and gave him a new piece of paper when he saw that [Appellant] had scribbled out his entire statement. *N.T.* p. 19. While [Appellant] did eventually write and sign a confession, the handwriting was poor. In an attempt to clarify things Trooper Lear wrote a question and had [Appellant] answer the question. *N.T.* p. 20. Trooper Lear did testify he had referred to [Appellant's] written statement as an "attempt" at a written statement in the police incident report that he authored; however, he stated this was only in reference to the page that had been entirely crossed out. *N.T.* pp. 23-24.

[Appellant] took the stand during the hearing and testified that he can only remember parts of the day of February 2, 2013. *N.T.* p. 31. [Appellant] remembers being hit over the head with an iron pipe in the early morning hours, but he does not remember being in the hospital for his injuries. *N.T.* p. 33.

[Appellant's] testimony was difficult to follow and he had to be instructed by his attorney to slow down. [Appellant] testified that he passed out on a bench at the police station and that the troopers were laughing at him. *N.T.* p. 36-37. In regards to the written statement, [Appellant] testified that he did not remember what he wrote down, but he did remember passing out and spilling coffee on the form. *N.T.* p. 37. [Appellant] did not remember writing an answer to the question written by Trooper Lear. *N.T.* p. 38.

The Court found that the Commonwealth had proven by a preponderance of the evidence that based on the totality of the circumstances, [Appellant's] written confession was voluntary. Therefore, by Order of Court dated September 25, 2013, the Court denied [Appellant's] Motion in Limine seeking suppression of his written statement of February 2, 2013.

The case went to trial at which the Commonwealth introduced the written statement as an exhibit. The jury found [Appellant] guilty of three counts of robbery threatening serious bodily injury, three counts of robbery threatening to commit murder, one count of theft by unlawful taking or disposition, and one count of possession of a controlled substance. [Appellant] was sentenced on October 29, 2013, to a State Correctional Institution for a period of not less than sixty-six (66) months nor more than one hundred thirty-two (132) months on each [of] the three robbery threatening serious bodily injury counts to be served consecutively. [Appellant] was also sentenced to six (6) to twelve (12) months on the possession of a controlled substance count to be served concurrently with the first count of robbery threatening serious bodily injury.

[Appellant] filed a Notice of Appeal on November 26, 2013 challenging the Order of Court entered on September 25, 2013, denying [Appellant's] Motion in Limine to suppress his written statement. The Court ordered a concise statement of matters complained of on appeal on November 27, 2013.

Trial Court Opinion, 1/21/14, at 1-6 (footnotes in original).

Appellant presents the following issue for our review:

> DID THE TRIAL COURT COMMITT [sic] ERROR IN DENYING APPELLANT'S REQUEST TO SUPPRESS AN INCULPATORY STATEMENT MADE BY APPELLANT WHILE IN POLICE CUSTODY AND PRIOR TO PRELIMINARY ARRAIGNMENT WHERE THE FACTS AND CIRCUMSTANCES INCIDENT TO THE STATEMENT INDICATE THAT IT WAS NOT VOLUNTARILY GIVEN?

Appellant's Brief at 3.

Appellant argues the trial court abused its discretion in denying Appellant's motion *in limine* seeking to suppress the written statement that he provided to the police. Appellant asserts the Commonwealth failed to meet its burden of showing that Appellant's confession was voluntary because he was not in a satisfactory physical or psychological condition to make the written confession.

We begin by observing that a motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. **Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. **Id**.

Furthermore, it is well settled that "[t]he admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Miles**, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*) (citing **Commonwealth v. Lilliock**, 740 A.2d 237 (Pa. Super. 1999)). Abuse of discretion requires a finding of misapplication of the law, a failure

-6-

to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. **Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009).

Moreover, we are aware that Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

> The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. **Commonwealth v. Russo**, 594 Pa. 119, 126, 934 A.2d 1199, 1203 (2007) (citing **Commonwealth v. Boczkowski**, 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. **Id**. It is also well settled that the appellate court is not bound by the suppression court's conclusions of law. **Id**. (citing **Commonwealth v. Duncan**, 572 Pa. 438, 817 A.2d 455 (2003)). However, [w]hether a confession is constitutionally admissible is a question of law and subject to plenary review. **Commonwealth v. Nester**, 551 Pa. 157, 160, 709 A.2d 879, 881 (1998).

> > Thus, this Court does not, nor is it required to, defer to the suppression court's legal conclusions that a confession or **Miranda**[3] waiver was knowing or voluntary. Instead, we examine the record to

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

determine if it supports the suppression court's findings of fact and if those facts support the conclusion that, as a matter of law, Appellant knowingly and intelligently waived his **Miranda** rights. Preliminarily, we note:

> Regardless of whether a waiver of **Miranda** is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing and intelligent*.
>
> **Miranda** holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived.

**Commonwealth v. Cephas**, 522 A.2d 63, 65 (Pa. Super. 1987) (emphasis in original).

**In the Interest of T.B.**, 11 A.3d 500, 505-506 (Pa. Super. 2010).

\* \* \*

-8-

In examining the totality of circumstances, we also consider: (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) "any and all other factors that could drain a person's ability to withstand suggestion and coercion."  **Nester**, 551 Pa. at 164, 709 A.2d at 882.

**Commonwealth v. Knox**, 50 A.3d 732, 746 (Pa. Super. 2012).

The trial court offered the following analysis pertaining to Appellant's

claim:

> In considering the factors that are part of the totality of the circumstances determination of the voluntariness of a confession, on the record the Court emphasized the physical and psychological state of [Appellant] as that was the focus of [Appellant's] Motion in Limine and his rationale for suppressing the written statement.  The Court stated on the record that it found the testimony of Trooper Sprague and Trooper Lear to be credible in their descriptions of [Appellant's] behavior and mental state on February 2, 2013.  *N.T.* p. 44.  The Court also had the opportunity to assess [Appellant] and his demeanor. [Appellant] appeared hyper and had to be redirected by his attorney during his testimony.  [Appellant] had difficulty expressing his thoughts in a linear fashion on the stand and the Court found that his written statement with all of its scribbles, horrendous handwriting, and ambiguous content was consistent with [Appellant's] observed behavior.  *Id*.  There is nothing in the record to suggest that based on the physical and psychological state of the accused that he was manipulated or coerced such that his written statement was not voluntarily given.
>
> While the Court focused its discussion on the record to the physical and psychological state of the accused when determining whether the confession was voluntary, the Court did consider the other factors that are part of the totality of the circumstances test.  Regarding the duration of the interrogation, the Court heard evidence that [Appellant] verbally confessed after less than a half an hour in the interrogation room.  At the

hearing there was testimony from the troopers in regards to their conduct during the interrogation. Both Trooper Sprague and Lear testified that they did not threaten or coerce [Appellant], nor did they offer [Appellant] leniency in exchange for his cooperation. Additionally, [Appellant] was given Miranda warnings twice. Considering all of the evidence presented at the hearing there was nothing to suggest that under any of the factors that the confession was not voluntary. Therefore, based on the totality of the circumstances, the Court found that the written statement was voluntary and denied [Appellant's] request that it be excluded.

Trial Court Opinion, 1/21/14, at 8-9. We are constrained to agree with the trial court's determination in this regard.

Our review of the record indicates that the totality of the facts support the trial court's decision to deny Appellant's motion *in limine* seeking to suppress his written confession. Appellant was present with the police at his residence for several hours during the initial investigation of the robbery prior to Appellant being taken to the police barracks. N.T., 9/25/13, at 4, 9-10, 14. After Appellant was transported to the police barracks, Appellant was twice given his **Miranda** warnings prior to making his written confession. *Id*. at 5, 10-11, 14-16. Approximately one-half hour after arriving at the police barracks, Appellant verbally confessed to the robbery. *Id*. at 7. Both troopers who handled the interrogation of Appellant testified that Appellant was never threatened; was never coerced; was never offered lieniency for cooperation; was never verbally or physically intimidated; was never held in an uncomfortable position; and they did not yell at him. *Id*. at

8, 18. The record further reflects that after Appellant verbally confessed to police, they asked him to write his confession, and they left the room while Appellant did so. *Id*. at 18-19. It was only after Appellant had difficulty drafting a written statement that Trooper Lear assisted Appellant. *Id*. at 19-20. Specifically, Trooper Lear offered the following testimony in this regard:

> Q.    And at the end, to clarify things, did you write a question and have him answer it?
>
> A.    Yes, sir.
>
> Q.    What was that question?
>
> A.    The question is, Did you go to MacDonald's Pharmacy and hand a note to the cashier stating you have five seconds to put a Ritalin, comma, Adderall, comma, and Xanax in a bag, before I kill you and everybody here. This is not a game, comma, test me, explanation point.
>
> Q.    And did he respond to that?
>
> A.    Answer was yes, then he initialed it, and then signed it, and then put the time.
>
> Q.    At any point in the process did [Appellant] appear to not know what was going on?
>
> A.    No.

*Id*. at 20.

In light of these facts, it is our conclusion that the trial court did not err in denying Appellant's motion *in limine* seeking to suppress his confession to police. Therefore, Appellant's contrary claim lacks merit.

Judgment of sentence affirmed.

Judge Panella joins the Memorandum.

Justice Fitzgerald Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/8/2014</u>