J-S59008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DWAYNE HILL, :
:
Appellant : No. 2354 EDA 2013

Appeal from the Judgment of Sentence Entered July 12, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0014013-2008.

BEFORE: SHOGAN, J., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.: **FILED DECEMBER 02, 2014**

Appellant, Dwayne Hill, appeals from the judgment of sentence

entered on July 12, 2013, in the Philadelphia County Court of Common

Pleas. We affirm.

The relevant facts and procedural history of this matter were set forth

by the trial court as follows:

[Appellant] was arrested on August 24, 2008, and charged
with numerous offenses arising from the alleged rape of a 16
year old female [("the victim")]. His pretrial motion to suppress
the statement he gave to the police at the time of his arrest was
denied on December 22, 2009. At a jury trial concluded on May
25, 2012, he was convicted of Rape by Forcible Compulsion and
found not guilty of Involuntary Deviate Sexual Intercourse by
Forcible Compulsion, all of the other related charges having been
*nolle prossed* prior to trial. His post verdict motion for relief was
denied on April 19, 2013, he was sentenced to eight (8) to

_____
*Retired Senior Judge assigned to the Superior Court.

sixteen (16) years incarceration on July 12th, and this timely appeal was filed on August 9th. In short, the evidence showed that shortly after midnight on June 11, 2008, he assaulted the victim on a public sidewalk, dragged her into an alley and forcibly raped her while threatening to use a knife. The state's case mainly consisted of the complainant's testimony that [Appellant] abducted her and forced her to engage in oral and vaginal sex and her identification of him in court, [Appellant's] statement to the police, in which he at first denied but, after being advised that his DNA had been found in the victim's vagina, then admitted to having had vaginal, but not oral, sex with her at the time and location [the victim] had said that the incident had occurred . . . .

Trial Court Opinion, 3/13/14, at 1-2 (footnotes omitted).

On appeal, Appellant raises the following issues for this Court's consideration:

1. Was not the evidence admitted at trial, including the identification of [A]ppellant by the [victim], [A]ppellant's statement, and the DNA evidence insufficient to prove that [A]ppellant was the perpetrator of the crime?

2. Did not the lower court err in denying [A]ppellant's motion to suppress his statement given to police inasmuch as the Commonwealth failed to meet its burden that [A]ppellant, who told police he was illiterate prior to the interrogation, made a knowing, voluntary and intelligent waiver of his Miranda rights?

Appellant's Brief at 4. We will address these issues in the order in which they were presented.

In his first issue on appeal, Appellant challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as

verdict winner, was sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. James*, 46 A.3d 776 (Pa. Super. 2012). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007); *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so inconclusive that as a matter of law no probability of fact may be drawn from the circumstances. *Moreno*, 14 A.3d at 133.

As noted above, Appellant was convicted of rape by forcible compulsion. This crime is straightforwardly defined as follows: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant … [b]y forcible compulsion." 18 Pa.C.S. § 3121(a)(1).

Upon review of the issue as presented, we agree with the Commonwealth that Appellant is not challenging the sufficiency of the evidence, but rather the weight of the evidence. Commonwealth's Brief at 12. Appellant argues that his statement to police, the victim's identification, and the DNA evidence were "insufficient." Appellant's Brief at 17. However, Appellant is actually challenging credibility, and thus, the weight of the evidence in those issues.[1]

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009) (citation omitted). Appellate review of a challenge to the weight of the evidence is a review of the trial court's discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Id*. (citation omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court. *Id*. (citations and quotation marks omitted).

In order to preserve a challenge to the weight of the evidence, the defendant must present the claim either in an oral or written motion prior to sentencing or in a timely-filed post-sentence motion. *Commonwealth v.*

---

[1] The **admissibility** of Appellant's statement to the police will be addressed in our discussion of Appellant's second issue.

*Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) (citing Pa.R.Crim.P. 607).  Here,

Appellant raised a challenge to the weight of the evidence in a pre-sentence

motion for extraordinary relief that was denied following a hearing on April

19, 2013.  Accordingly, Appellant's challenge to the weight of the evidence

was preserved.

In its opinion, the trial court responded to Appellant's claim of error as

follows:

> In his post verdict motion seeking an arrest of judgment or a new trial[7], counsel made no mention of the defendant's statement to the police or the victim's identification, but simply claimed, with regard to all the evidence in general, ". . . that the verdict of the jury was so grossly inconsistent that a new trial is mandated in the interests of justice" without specifying what particular items of evidence were inconsistent, and, with regard to the DNA,

>> ". . . that the scientific evidence introduced at trial not only created a reasonable doubt but proved conclusively that petitioner could not have committed the rape because, while [t]he DNA evidence presented by the prosecution disclosed that a mixture containing DNA of the complainant and her assailant was preserved in the normal course during her examination immediately after she was assaulted[, it] further established that there was a DNA marker, or allele, that was foreign to the DNA provided by petitioner and the complainant thereby excluding petitioner as the person who committed the crime and [a]t trial the prosecutor elicited reasons for the existence of the aforementioned allele from her forensic examiner which amounted to conjecture and speculation and which had absolutely no factual basis."

At the hearing on the motion, counsel's argument as to the inconsistent verdict was simply:

> Judge, the main thrust of the motion, besides the verdicts being so grossly inconsistent as to render -- and to render them unreliable. I mean, there is just no way in this case that the jury could find the defendant guilty of one charge and not the other charge.
>
> Obviously, they didn't even appreciate or consider the evidence because it was an ID case, ID in a scientific case.
>
> The incident occurred. What happened to [the victim] happened to [the victim]. There's no question about it. It was conceded. It was never argued. Yet, the jury chose to completely disregard the predicate act to the rape in this case and find him not guilty of that charge.
>
> In that sense, I don't think that it's just something minor. I don't think it's something that would give confidence to the jury verdict. In fact, I don't think it's something that's inconsequential. I think it's significant. I think it shocks the conscience that the jury could hear an identification case and make the decision that they did.

*Notes of Testimony, Motion Volume 1, April 19, 2013, p. 5*. His argument on the DNA evidence, though very verbosely presented, simply boiled down to, as indicted by the motion, that it was faulty because the examiner found a single unmatched marker in the sample in which he found the defendant's and the complainant's markers. *Id., pp*. 5-20.

[7] Motion for Extraordinary Relief, pars. 6, 2-5, presented to and heard and denied by the court on April 19, 2013.

As pointed out by the Commonwealth in its response to the motion and by the court in its ruling, the apparent inconsistency

in the two verdicts could simply have resulted from the jury having found that all of the elements of the crime for which he was convicted were proven to have occurred but that one or more of the elements of the other were not, and that all of these arguments were all thoroughly presented to the jury, which obviously discounted them.[8] The defendant's arguments simply represent an attempt to have the court view those minute pieces of evidence in a light more favorable to the defendant than to the verdict winner and completely disregard all the other evidence, in particular the defendant's undisputed admission that he did have vaginal intercourse with the victim at the time and place that she said he raped her.

> **THE COURT:** It's not necessarily inconsistent because you have two sexual acts defined differently under the Crimes Code and the jury comes back with a guilty of one and a not guilty of another. During the testimony there could have been some question of whether the necessary element of penetration relevant to the IDSI was actually achieved.
>
> If the jury found that there was no penetration however slight, then they can conceivably find him not guilty of the IDSI and guilty of the rape where they did find penetration was complete as a necessary element. And it's not necessarily an inconsistent verdict.
>
> Although it's not dispositive and you cannot ignore the DNA evidence in this case, I posit that you could legitimately argue in this case, although it's capable of different interpretations, that you have no contest as to the fact that there was a sexual act performed on a complaining witness.
>
> You can argue, as the Commonwealth did, that in his statement the defendant agreed that he had sex, although in his statement consensually for money, $10 I believe, had sex. So the question of whether there was sexual intercourse becomes moot.

> The only question that remains is whether it was consensual or not. And the complainant testified it was not. The defendant, who need not be identified since according to the argument made based upon the statement that he had sex with the lady, there's no identity question.
>
> If you take the DNA evidence totally out of the case, what do you have? A sexual act that is admitted by both sides. The only argument is whether it was consensual or not. And the jury rejected any argument that could be founded in nonconsensual activity. However, DNA did, as counsel quite correctly points out, form an important part in this case.
>
> On a motion for extraordinary relief, however, the jury heard all these arguments and rejected them. Counsel may not like it and find it illogical or unreasonable that they rejected them, but they rejected them.
>
> And the Court sees nothing extraordinary about that other than displeasure. As far as I'm concerned, the motion is denied.

*Id., pp. 21-2*. With regard to the DNA, the only "conjecture and speculation" that the examiner offered were simply his explanations as to why the specimen he examined also contained an unmatched marker, those being possible contamination by the test kit makers or handlers; he emphatically testified that the mere presence of such a minor artifact in no way excluded or even raised a reasonable question of the actual presence of both the complainant's and the defendant's DNA nor the statistical probabilities that it was, in fact, his DNA and not someone else's. As for the verdicts in general, there is no real inconsistency in finding a rape but not an indecent assault.

[8] The Commonwealth noted that the acquittal for DST could have resulted from the facts that, while the defendant admitted to the police to having had

vaginal intercourse with the victim, he denied having oral sex, and while the defendant's DNA was found in the victim's vagina, none was found in her mouth.

Trial Court Opinion, 3/13/14, at 13-15.

We agree with the trial court. The jury weighed the victim's testimony, Appellant's version of events, and the DNA evidence, and the jurors chose to credit the Commonwealth's case. Nothing in the verdict shocks one's conscience, and we conclude there was no abuse of discretion in the trial court denying Appellant's post-verdict motion challenging the weight of the evidence.

Insofar as Appellant's issue has raised a challenge to the sufficiency of the evidence, we conclude that he is entitled to no relief. Here, the victim testified that Appellant stopped her on the street and dragged her into an alley while she was screaming. N.T., Trial, 5/22/12, at 88.[2] She stated that Appellant held her at knifepoint, forced her to her knees, and directed her to perform fellatio. *Id*. at 90. She testified that when she tried to run, Appellant grabbed her arm and exposed his penis forcing her to perform fellatio. *Id*. at 91. Appellant then put a condom on and continued to compel the victim to perform fellatio. *Id*. at 92. The victim testified that

---

[2] We point out that there is an error in each of the volumes of the notes of testimony from Appellant's trial. While the trial was held in May of 2012, the cover page and header from the notes of testimony state that the trial was in May of 2013. As the record reveals that trial was in May of 2012, that is the date we will utilize throughout our discussion.

Appellant forced her on her hands and knees and penetrated her vagina with his penis. *Id*. at 92. The victim stated that Appellant then turned her over on her back and continued to penetrate her vagina with his penis. *Id*. at 93-94. She testified that she was crying, she could not get Appellant from atop her, and that she had no choice in this attack. *Id*. When Appellant completed his assault, he told the victim to count to 100, and he fled. *Id*. at 95. The victim then pulled her shorts back on and reported that she was raped. *Id*. at 98.

It is well settled that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." ***Commonwealth v. McDonough***, 96 A.3d 1067, 1069 (Pa. Super. 2014). Here, the jury believed that the victim was raped and convicted Appellant. Upon review, we are satisfied that, even if we were to discount all of the additional evidence of Appellant's guilt, the Commonwealth, through the testimony of the victim alone, established sufficient evidence that Appellant committed the crime of rape by forcible compulsion beyond a reasonable doubt.

In his second issue, Appellant claims the trial court erred in denying his motion to suppress the statement he made to the police. "The admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused

its discretion." ***Commonwealth v. Miles***, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*) (citing ***Commonwealth v. Lilliock***, 740 A.2d 237 (Pa. Super. 1999)). Abuse of discretion requires a finding of misapplication of the law, a failure to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. ***Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009).

Moreover, we are aware that Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

> The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. ***Commonwealth v. Russo***, 594 Pa. 119, 126, 934 A.2d 1199, 1203 (2007) (citing ***Commonwealth v. Boczkowski***, 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. ***Id***. It is also well settled that the appellate court is not bound by the suppression court's conclusions of law. ***Id***. (citing ***Commonwealth v. Duncan***, 572 Pa. 438, 817 A.2d 455 (2003)). However, whether a confession is constitutionally admissible is a question of law and subject to plenary review.

> ***Commonwealth v. Nester***, 551 Pa. 157, 160, 709 A.2d 879, 881 (1998).

> Thus, this Court does not, nor is it required to, defer to the suppression court's legal conclusions that a confession or ***Miranda***[3] waiver was knowing or voluntary. Instead, we examine the record to determine if it supports the suppression court's findings of fact and if those facts support the conclusion that, as a matter of law, Appellant knowingly and intelligently waived his ***Miranda*** rights. Preliminarily, we note:

>> Regardless of whether a waiver of ***Miranda*** is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing and intelligent*.

>> ***Miranda*** holds that "the defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that ***Miranda*** rights have been waived.

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

> ***Commonwealth v. Cephas***, 522 A.2d 63, 65 (Pa.
> Super. 1987) (emphasis in original).
>
> ***In the Interest of T.B.***, 11 A.3d 500, 505-506 (Pa. Super.
> 2010).
>
> * * *
>
> In examining the totality of circumstances, we also consider: (1)
> the duration and means of an interrogation; (2) the defendant's
> physical and psychological state; (3) the conditions attendant to
> the detention; (4) the attitude of the interrogator; and (5) "any
> and all other factors that could drain a person's ability to
> withstand suggestion and coercion." ***Nester***, 551 Pa. at 164,
> 709 A.2d at 882.

***Commonwealth v. Knox***, 50 A.3d 732, 746 (Pa. Super. 2012).

Here, the trial court offered the following analysis regarding Appellant's claim that the statement was inadmissible:

> In summary, the officer's uncontradicted testimony clearly
> showed that the defendant was properly apprehended by the
> police based upon an apparently valid arrest warrant, was not
> questioned until after he was told that he was being arrested for
> the rape in question and was repeatedly advised of his rights to
> remain silent, to speak to an attorney, with which he was
> advised he would have been provided by the court if desired,
> and that whatever he said could be used in court, was not under
> the influence of any drugs or alcohol and was calm, alert,
> responsive and cooperative, had not been threatened or abused,
> was read everything that he told to the officer who had typed
> everything verbatim, had some experience in such matters,
> having been arrested twice and tried at least once previously for
> other unspecified offenses, and that he fully acknowledged his
> understanding of those rights and what he was purported to
> have said both verbally and by initialing parts and signing the
> complete statements of his rights and the facts he disclosed,
> even, at one point, despite having claimed to be unable to read,
> actually writing in and initialing a clarification on the typed

statement.[6] The defense did not present any evidence as to the extent of the defendant's illiteracy, nor any with regard to the other allegations of impropriety in his arrest or questioning, other than to emphasize on cross that he told the police he couldn't read, nor anything else to demonstrate any lack of an ability to fully comprehend his rights or the consequences of relinquishing them. Although the defendant did not explicitly state that he waived his rights, neither did he at any time express any desire to terminate the questioning or to speak to and have an attorney present.

> [6] *Id., pp. 5-23.* On the bottom of one page he wrote "I did not know what you were talking about at first.", followed by his initials. *Id., p. 19.* Also of note is that the defendant acknowledged completing the 11th grade (*Id., p. 13*), and that the arrest and the taking of his statement only took about an hour and fifteen minutes (*Id., pp. 6, 33*).

Trial Court Opinion, 3/13/14, at 6-7 (verbatim).

We discern no error. Appellant was informed of his right to remain silent and to have an attorney, and he chose to waive those rights. Despite Appellant's claimed illiteracy, he properly initialed and signed his statement, in addition to handwriting an addendum. In examining the totality of the circumstances, we cannot agree that Appellant's degree of literacy in any way impeded his ability to voluntarily, knowingly, and intelligently make the statement to the police. Accordingly, we discern no error or abuse of discretion in the trial court's decision to deny Appellant's suppression motion.

For the reasons set forth above, Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2014